CALDWELL LESLIE & PROCTOR, PC
LINDA M. BURROW, State Bar No. 194668
  burrow@caldwell-leslie.com
JEANNE A. FUGATE, State Bar No. 236341
  fugate@caldwell-leslie.com
FEIFEI B. JIANG, State Bar No. 301716
  jiang@caldwell-leslie.com
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for Plaintiffs
DISNEY ENTERPRISES, INC.; LUCASFILM LTD.
LLC; LUCASFILM ENTERTAINMENT COMPANY
LLC; MARVEL CHARACTERS, INC.; MVL FILM
FINANCE LLC;  NBCUNIVERSAL MEDIA, LLC;
UNIVERSAL CITY STUDIOS LLC; WARNER BROS.
ENTERTAINMENT INC.; and SONY PICTURES
ENTERTAINMENT INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DISNEY ENTERPRISES, INC. a Delaware corporation; LUCASFILM LTD. LLC, a California limited liability company; LUCASFILM ENTERTAINMENT COMPANY LLC, a California limited liability company; MARVEL CHARACTERS, INC., a Delaware corporation; MVL FILM FINANCE LLC, a Delaware limited liability company; NBCUNIVERSAL MEDIA, LLC, a Delaware limited liability company; UNIVERSAL CITY STUDIOS LLC, a Delaware limited liability company; WARNER BROS. ENTERTAINMENT INC., a Delaware Corporation; and SONY PICTURES ENTERTAINMENT INC., a Delaware Corporation, | Case No. 2:16-CV-9432 **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** **DEMAND FOR JURY TRIAL** Trial Date:        None Set |
| Plaintiffs, v. | |
| HOLLYWOOD ENTERTAINMENT GROUP LLC, a Nevada Limited Liability Company, d/b/a VIP CONCIERGE, INC.; and CRAIG BANASZEWSKI, an individual, | |
| Defendants. | |

CALDWELL
LESLIE &
PROCTOR

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................... 1

II. THE PARTIES ..................................................................... 2

    A.   Plaintiffs ..................................................................... 2

        1.   The Disney Plaintiffs .................................................. 2

        2.   The NBCUniversal Plaintiffs ....................................... 2

        3.   Plaintiff Warner Bros. Entertainment Inc. ....................... 3

        4.   Plaintiff Sony Pictures Entertainment Inc. ....................... 3

    B.   Defendants .................................................................. 3

III. PERSONAL JURISDICTION AND VENUE ............................ 4

IV. ADDITIONAL FACTS COMMON TO ALL COUNTS ............... 5

    A.   The Disney Plaintiffs' Private Events .............................. 6

    B.   The NBCUniversal Plaintiffs' Private Events .................... 7

        1.   The NBCUniversal Plaintiffs Sponsor Private Movie
            Premieres ................................................................ 7

        2.   The NBCUniversal Plaintiffs Host Private Television Show
            Tapings ................................................................... 8

        3.   Defendants Unlawfully Advertise and Sell Tickets to the
            NBCUniversal Plaintiffs' Movie Premieres and Television
            Tapings, Including Purported Events that Have Not Yet
            Been Scheduled ....................................................... 10

    C.   Warner Bros. Private Events ......................................... 11

        1.   Warner Bros. Sponsors Private Movie Premieres ............ 11

        2.   Warner Bros. Hosts Private Television Show Tapings ....... 12

        3.   Defendants Unlawfully Advertise and Sell Tickets to
            Warner Bros. Movie Premieres and Television Tapings,
            Including Purported Events that Have Not Yet Been
            Scheduled ............................................................... 13

    D.   SPE Private Events ..................................................... 14

        1.   SPE Sponsors Private Movie Premieres ....................... 14

2.    Defendants Unlawfully Advertise and Sell Tickets to SPE Movie Premieres, Including Purported Events that Have Not Yet Been Scheduled ...................................................................... 15

E.    Defendants' Unauthorized Use of Plaintiffs' Intellectual Property ...... 16

1.    The Disney Plaintiffs' Intellectual Property .............................. 16

2.    The NBCUniversal Plaintiffs' Intellectual Property ................. 18

3.    Warner Bros.' Intellectual Property........................................... 19

4.    SPE's Intellectual Property ........................................................ 20

F.    Defendants' Conduct Is Willful under Applicable Law ....................... 21

1.    The Disney Plaintiffs Demanded that Defendants Stop Their Misconduct ......................................................................... 21

2.    The NBCUniversal Plaintiffs Demanded that Defendants Stop Their Misconduct .............................................................. 22

3.    Warner Bros. Demanded that Defendants Stop Their Misconduct .................................................................................. 23

4.    SPE Demanded that Defendants Stop Their Misconduct........... 24

G.    Defendants' Continued Disregard for Plaintiffs' Rights ..................... 24

V. CAUSES OF ACTION ......................................................................................... 25

COUNT I .......................................................................................................... 25

COUNT II ......................................................................................................... 26

COUNT III ....................................................................................................... 27

COUNT IV ....................................................................................................... 28

COUNT V ......................................................................................................... 29

VI. PRAYER FOR RELIEF ..................................................................................... 30

VII. DEMAND FOR JURY TRIAL........................................................................ 34

CALDWELL
LESLIE &
PROCTOR

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# I.INTRODUCTION

1.      This is an action to stop Defendants from selling tickets to Plaintiffs' private events.  Plaintiffs are entertainment companies who regularly hold private screenings, openings, and tapings, which are meant to promote and enhance Plaintiffs' relationships with key partners, talent, and members of the press.  The events are not money-making ventures, and Plaintiffs do not sell tickets at any price.  Instead, Plaintiffs make each event available only to a carefully selected and small group of particular individuals.

2.      Defendants advertise and sell unauthorized admission to these private events, sometimes charging thousands of dollars, and they regularly misuse Plaintiffs' intellectual properties to do it.  In addition to the obvious infringements, Defendants occasionally succeed in gaining access for uninvited and unvetted individuals, which heightens the risks of unauthorized videorecording and the physical security of Plaintiffs' invited guests, and causes Plaintiffs to suffer harm to their goodwill and reputation.  This action arises under the federal trademark statute (the "Lanham Act"), 15 U.S.C. §§ 1051, et seq. and under the federal copyright laws (the "Copyright Act"), 17 U.S.C. §§ 101, et seq.  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 112, and 28 U.S.C. §§ 1331, 1338 and 1367.

3.      Despite repeated requests by each Plaintiff and despite two prior lawsuits by others for similar conduct, Defendants refuse to stop their misconduct, leaving Plaintiffs no option but to ask this Court to enjoin the behavior.  *See National Academy of Recording Arts & Sciences, Inc. v. Hollywood Entertainment Group LLC, et al.*, Central Dist. Case No. 15-cv-594 JFW (AFMx) (plaintiff alleged that Defendants had unlawfully advertised and offered for sale tickets to the GRAMMY Awards ceremony); *Victoria's Secret Stores Brand Management, Inc. v. Hollywood Entertainment Group LLC, et al.*, Central Dist. Case No. 15-cv-8704 RGK (ASx) (plaintiff alleged that Defendants had unlawfully advertised and offered for sale tickets to the Victoria's Secret Fashion Show).  In each instance, Defendants agreed to

1  a permanent injunction prohibiting Defendants from selling or offering for sale tickets

2  to the private events.

## II.

## THE PARTIES

***A.   Plaintiffs***

### 1.   The Disney Plaintiffs

4.     Plaintiff Disney Enterprises, Inc. ("DEI") is a corporation duly organized and existing under the laws of the State of Delaware, having its principal place of business in Burbank, California.

5.     Plaintiffs Lucasfilm Ltd. LLC and Lucasfilm Entertainment Company Ltd. LLC (jointly, "Lucasfilm") are limited liability companies, each duly organized and existing under the laws of the State of California, and each having its principal place of business in San Francisco, California.

6.     Plaintiff Marvel Characters, Inc. is a corporation duly organized and existing under the laws of the State of Delaware.  Plaintiff MVL Film Finance LLC is a limited liability company duly organized and existing under the laws of the State of Delaware.  Both have their principal places of business in Burbank, California. Marvel Characters, Inc. and MVL Film Finance LLC are collectively referred to herein as "MCI." Plaintiffs DEI, Lucasfilm Ltd. LLC, Lucasfilm Entertainment Company LLC, Marvel Characters, Inc., and MVL Film Finance LLC are affiliated with each other and are referred to collectively as the "Disney Plaintiffs."

### 2.   The NBCUniversal Plaintiffs

7.     NBCUniversal Media, LLC ("NBCUniversal") is a limited liability company duly organized and existing under the laws of the State of Delaware, having its principal place of business in New York, New York.

8.     Universal City Studios LLC ("Universal") is a limited liability company duly organized and existing under the laws of the State of Delaware, having its principal place of business in Universal City, California.  Universal is a subsidiary of

1  NBCUniversal.  NBCUniversal and Universal are referred to collectively as the

2  "NBCUniversal Plaintiffs."

3      **3.**    **Plaintiff Warner Bros. Entertainment Inc.**

4      9.    Plaintiff Warner Bros. Entertainment Inc. ("Warner Bros.") is a

5  corporation duly organized and existing under the laws of the State of Delaware,

6  having its principal place of business in Burbank, California.

7      **4.**    **Plaintiff Sony Pictures Entertainment Inc.**

8      10.    Sony Pictures Entertainment Inc. ("SPE") is a corporation duly

9  organized and existing under the laws of the State of Delaware, having its principal

10  place of business in Culver City, California.

11  **B.**    *Defendants*

12      11.    On information and belief, defendant Hollywood Entertainment Group

13  LLC is a Nevada limited liability company with its principal place of business located

14  at 9107 Wilshire Blvd., Suite 450, Beverly Hills, California 90210.  Upon further

15  information and belief, Hollywood Entertainment Group LLC does business under

16  the trade name "VIP Concierge, Inc."  Hollywood Entertainment Group LLC holds

17  itself out as a commercial ticket broker for sought-after entertainment, sporting, and

18  other events, and offers to sell and sells such tickets (which are not sold for money by

19  Plaintiffs) for substantial sums, sometimes as part of entertainment packages.  It has

20  offered to sell and/or sold such tickets in every state of the United States, including

21  California, through, among other things, its website www.thevipconcierge.com.

22  Attached hereto as Exhibit I is a representative sample of screenshots from the

23  website.

24      12.    On information and belief, defendant Craig Banaszewski is an individual

25  residing in or around Los Angeles, California, and the owner and managing member

26  of Hollywood Entertainment Group LLC.  Banaszewski supervises or controls the

27  unlawful activities alleged herein, has a direct financial interest in the unlawful

28  activities, and is the moving and conscious force behind the unlawful activities.  In

addition or alternatively, Banaszewski had knowledge or reason to know of the unlawful activities and took actions that contributed to these activities.

## III.

## PERSONAL JURISDICTION AND VENUE

13. Plaintiffs' claims are for infringement of their respective trademarks (Count 1) and copyrights (Count 2). Defendants' misconduct also constitutes false association and unfair/deceptive acts or practices under federal and state law (Counts 3 and 4) and inducement to trespass under state law (Count 5).

14. Defendants' behavior creates false impressions that their business has some association with Plaintiffs' businesses, which false impressions are exacerbated by Defendants' misuse of Plaintiffs' intellectual property to advertise those unauthorized tickets.

15. Defendants' conduct is occurring in significant part and causing harm in this judicial district. It is especially harmful and dangerous to Plaintiffs and their real guests. Many of the private events are held in this judicial district and involve content that has not yet been released. Defendants' uninvited and unvetted customers might try to camcord the content, which is often shown at these events, well before it is released to the public. Many of the events are attended by political dignitaries, senior executives, and/or celebrities whose physical safety may be put at risk by one or other of the uninvited and unvetted customers of Defendants. In any case, Defendants' misconduct exposes Plaintiffs to all sorts of risk and added expenses including those associated with increased security and the irreparable harm to Plaintiffs' goodwill and reputation arising from the uninvited customers' ejection.

16. Defendants' misconduct is also to harmful to their own unwitting customers, who may pay thousands of dollars for the unauthorized tickets and incur expenses for attire and travel, only to be refused entry to—or worse, potentially ejected from—the private events as trespassers.

17.     Plaintiffs are informed and believe, and on that basis allege, that this Court has personal jurisdiction over Defendants because (i) Defendant Hollywood Entertainment Group LLC has its principal place of business in the state of California and this judicial district; (ii) Defendant Craig Banaszewski is a resident in the state of California and this judicial district; (iii) Defendants conduct business within the state of California and this judicial district; (iv) the causes of action asserted in this Complaint arise out of Defendants' contacts within the state of California and this judicial district; and (v) Defendants have caused tortious injury to Plaintiffs in the state of California and this judicial district.

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because (i) defendant Hollywood Entertainment Group LLC has its principal place of business in the State of California and this judicial district; (ii) defendant Craig Banaszewski is a resident in the state of California and this judicial district; (iii) Defendants conduct business within the state of California and this judicial district; (iv) the causes of action asserted in this Complaint arise out of Defendants' contacts within the state of California and this judicial district; and (v) Defendants have caused tortious injury to Plaintiffs in the state of California and this judicial district.

## IV.

## ADDITIONAL FACTS COMMON TO ALL COUNTS

19.     Plaintiffs and their affiliates produce and distribute some of the most well-known television shows and motion pictures in the country, attracting millions of viewers in the United States and worldwide.  Attendance at Plaintiffs' movie premieres and set tapings is considered a valuable privilege, extended only to a small group of invited guests, primarily to enhance Plaintiffs' business and creative relationships.

### A.      The Disney Plaintiffs' Private Events

20.      The Disney Plaintiffs sponsor private, invitation-only events including motion picture premieres.  The invitations carry a header in large, bold font, "NON-TRANSFERABLE PASS" and also state, "This pass is a revocable license good only for admission of the original Pass Holder to this event.  It may not be sold or offered for sale and has no cash value" as well as, "Photographing or other copying of this pass is prohibited."  Invitees who confirm their desire to attend must generally pick up their tickets in person with a valid photo identification at the event.

21.      Defendants have advertised, offered for sale and sold purported admission to the Disney Plaintiffs' private events and, upon information and belief, continue to do so.  Defendants also advertise and purport to sell tickets to events, such as premieres for soon-to-be-released movies, that the Disney Plaintiffs have not yet even scheduled and as to which Defendants would not, in any case, have the right to sell tickets even once the event is scheduled.  Defendants' practices have misled and deceived consumers and harmed the Disney Plaintiffs.

22.      For example, in April 2016, a consumer purchased from VIP Concierge what purported to be access to the Radio Disney Music Awards ("RDMA") Red Carpet, scheduled for April 30, 2016.  The consumer paid $890 per ticket, plus a $40 processing fee, for a total of $3,600.  VIP Concierge emailed her instructions to meet a VIP Concierge representative at a location near the Microsoft Theater, located at 777 Chick Hearn Court, in Los Angeles, where the RDMA was held.  When the consumer arrived at the location, she and her three daughters were escorted by a VIP Concierge representative to the red carpet.  Security at the event observed that the group did not appear to have the proper credentials for the red carpet.  When asked about the group's credentials, the consumer explained that she had bought the tickets through Defendants' website thevipconcierge.com and produced a receipt from VIP Concierge.  Security informed the consumer that VIP Concierge was not authorized to sell such access and escorted the consumer and her daughters off of the red carpet.

Email communications sent to the purchaser by VIP Concierge concerning the purported RDMA Red Carpet acknowledged it was a private event, stating that "this is an exclusive VIP event and your tickets or Red Carpet access which you are receiving through us are not open to the public (except through us) and it is important that you NOT mention that you purchased tickets / red carpet."

23.     The homepage at www.thevipconcierge.com has advertised tickets for sale to the Disney Plaintiffs' private motion picture premieres and events, and Defendants have misused the Disney Plaintiffs' intellectual properties in those advertisements, including:

        a.    *Alice Through the Looking Glass*;

        b.    *Captain America: Civil War*;

        c.    *Doctor Strange*;

        d.    *Finding Dory*;

        e.    *The Jungle Book*;

        f.    *Moana*;

        g.    *Pirates of the Caribbean:  Dead Men Tell No Tales*;

        h.    *Star Wars:  Episode VII - The Force Awakens*; and

        i.    Radio Disney Music Awards Red Carpet.

24.     Unless enjoined, upon information and belief, Defendants will continue their misconduct, causing irreparable harm to the Disney Plaintiffs in the form of increased piracy and security risk and tarnishing of their names, marks and reputations among other things.

**B.    The NBCUniversal Plaintiffs' Private Events**

**1.    The NBCUniversal Plaintiffs Sponsor Private Movie Premieres**

25.     The NBCUniversal Plaintiffs sponsor private motion picture premieres, tickets to which are nontransferable.

26.     The NBCUniversal Plaintiffs send motion picture premiere invitations only to a list of invited guests, which generally includes filmmakers, talent, studio

executives, partners, press, and, in some instances, sponsors.  Most invitees who confirm their desire to attend must pick up their tickets in person with valid photo identification, which is checked against an approved list of confirmed attendees.

27.     To emphasize the strict prohibition against unauthorized transfer or sale, the NBCUniversal Plaintiffs include the following unambiguous language on all motion picture premiere invitations:  "THIS INVITATION IS ABSOLUTELY NON-TRANSFERABLE."

28.     To further emphasize the strict prohibition against unauthorized transfer or sale, tickets provided to invited guests state:  "THIS TICKET IS ABSOLUTELY NON-TRANSFERABLE."

29.     In addition, parking information reminds invited guests:  "Tickets are nontransferable."

**2.      The NBCUniversal Plaintiffs Host Private Television Show Tapings**

30.     The NBCUniversal Plaintiffs host private, invitation-only tapings to certain television shows, such as *The Tonight Show Starring Jimmy Fallon* ("*The Tonight Show*") and *Saturday Night Live*, tickets to which are nontransferable.

31.     With respect to *The Tonight Show*, the NBCUniversal Plaintiffs permit entry to the show only to invitees who secure a ticket through an online request, waiting in a standby line on the day of the show, or by securing a VIP guest pass from a company contact, which then entitles the holder to a ticket.  The NBCUniversal Plaintiffs do not charge for these tickets.

32.     For those invitees who secure tickets either online, through in-person standby, or by securing a VIP guest pass, the NBCUniversal Plaintiffs include the following unambiguous language on all tickets to *The Tonight Show* to emphasize the strict prohibition against unauthorized transfer or sale:  "NOT TO BE SOLD."

33.     Online tickets for *The Tonight Show* contain the following unambiguous language:

THIS E-TICKET IS NON-TRANSFERABLE.

1      . . .

2      Ticket reservations are non-transferable and are will call pickup only.

3      Please note that the reservation holder must attend the taping and tickets

4      will only be released if the reservation holder is present.

5      Tickets cannot be sold or auctioned.  Please note that The Tonight Show

6      Starring Jimmy Fallon and NBCUniversal reserve the right to revoke

7      any ticket believed to have been purchased or sold.

8      DISCLAIMER

9      NOT TO BE SOLD OR TRANSFERRED.  MUST BE USED BY THE

10      INVITEE ONLY (WHO MUST SHOW VALID GOVERNMENT

11      ISSUED ID) – REVOCABLE AT ANY TIME.

12      34.     Invitees who obtain VIP guest passes are issued an email confirmation

13 that bears their name.  The invitee then presents that confirmation and matching photo

14 identification to a guest relations representative, who then issues a ticket.

15      35.     To further emphasize the strict prohibition against unauthorized transfer

16 or sale, the NBCUniversal Plaintiffs include the following unambiguous language on

17 all tickets to *The Tonight Show*:  "NOT TO BE SOLD."

18      36.     With respect to *Saturday Night Live*, the NBCUniversal Plaintiffs permit

19 entry to the show only to invitees whose names appear on the audience coordinator's

20 list.  An individual secures a spot on that list, and thus entry into the show, in one of

21 three ways:  (i) by lottery, (ii) by waiting in a standby line on the day of the show, or

22 (iii) through a company contact.

23      37.     To emphasize the strict prohibition against unauthorized transfer or sale,

24 the NBCUniversal Plaintiffs include the following unambiguous language on all

25 electronic mail confirmations for *Saturday Night Live* tickets:  "All tickets are

26 complimentary and **may not be sold, auctioned or transferred to ANY another**

27 **[sic] individual.  If YOU are unable to attend this winning ticket [date/time]**

28 **please apply for tickets again next year!**  *Saturday Night Live* and NBC reserve the

1  right to revoke any ticket believed to have been purchased or sold."

2       38.    To further emphasize the strict prohibition against unauthorized transfer

3  or sale, the NBCUniversal Plaintiffs include the following unambiguous language on

4  all tickets to *Saturday Night Live*:  "COMPLIMENTARY TICKET - NOT TO BE

5  SOLD – REVOCABLE AT ANY TIME."

6      **3.**    **Defendants Unlawfully Advertise and Sell Tickets to the**

7            **NBCUniversal Plaintiffs' Movie Premieres and Television Tapings,**

8            **Including Purported Events that Have Not Yet Been Scheduled**

9       39.    Notwithstanding the prohibitions against unauthorized transfer or sale of

10  tickets to the NBCUniversal Plaintiffs' private, invitation-only events, Defendants

11  periodically continue to offer for sale, and upon information and belief, have sold

12  tickets to these events.  Defendants also advertise and purport to sell tickets to events,

13  such as premieres for soon-to-be-released movies, that the NBCUniversal Plaintiffs

14  have not yet even scheduled and as to which Defendants would not, in any case, have

15  the right to sell tickets even once the event is scheduled.

16       40.    On at least one occasion, the NBCUniversal Plaintiffs have had to turn

17  away individuals who sought entry to the NBCUniversal Plaintiffs' private event as a

18  result of a ticket purchase through VIP Concierge.  The attendees were refused entry

19  to the event.

20       41.    The homepage at www.thevipconcierge.com has advertised, or is

21  currently advertising, tickets for sale to private, invitation-only events and tapings for

22  the following NBCUniversal motion pictures and television programs and affiliated

23  events:

24           a.    *Fifty Shades of Grey*;

25           b.    *Fifty Shades Darker*;

26           c.    *Furious 7*;

27           d.    *Jason Bourne*;

28           e.    *Jurassic World*;

f.     *Neighbors 2:  Sorority Rising*;

g.     *The Huntsman: Winter's War*;

h.     *The Purge 3:  Election Year*;

i.     *Saturday Night Live* or *SNL*;

j.     *The Tonight Show Starring Jimmy Fallon*; and

k.     *The Golden Globes* After Party.

44.     Unless enjoined, Defendants will continue to offer to sell and sell tickets to the NBCUniversal Plaintiffs' private, invitation-only events to the unwitting public that upon Defendants' unlawful and unauthorized sale or transfer are void. Defendants will also continue to advertise and purport to sell tickets to events, such as premieres for soon-to-be-released movies, that the NBCUniversal Plaintiffs have not yet even scheduled and as to which Defendants would not, in any case, have the right to sell tickets even once the event is scheduled.

**C.    *Warner Bros. Private Events***

**1.    Warner Bros. Sponsors Private Movie Premieres**

45.     Warner Bros. sponsors private, invitation-only motion picture premieres, tickets to which are nontransferable.

46.     Warner Bros. sends motion picture premiere invitations only to a limited list of invited guests, which includes filmmakers, talent, cast, crew, studio executives, financiers, and partners.  Most invitees who confirm their desire to attend must pick up their tickets in person with a valid photo identification.  A certain number of tickets may be made available through radio promotions and by logging onto a nonpublic Warner Bros. website, but those tickets are provided directly to those guests and are not permitted to be resold.

47.     To emphasize the strict prohibition against unauthorized transfer or sale, invitations to motion picture premieres state that the invitations are "NONTRANSFERABLE."

48.     To further emphasize the strict prohibition against unauthorized transfer or sale, tickets provided to invited guests state: "WARNER BROS. ENTERTAINMENT RETAINS OWNERSHIP OF THIS TICKET, WHICH IS BEING PROVIDED TO YOU FOR YOUR PERSONAL USE ONLY, AND MAY NOT BE TRANSFERRED, SOLD OR BARTERED BY YOU TO ANY OTHER PERSON OR ENTITY."

49.     In addition, passes to Warner Bros. motion picture premiere after-parties state that they are: "STRICTLY NONTRANSFERABLE."

**2.     Warner Bros. Hosts Private Television Show Tapings**

50.     Warner Bros. hosts private, invitation-only motion picture premieres and tapings to certain television shows, such as *The Ellen DeGeneres Show* ("*Ellen*") and *The Big Bang Theory*, tickets to which are nontransferable.

51.     With respect to *Ellen*, Warner Bros. permits entry to the show only to invitees who secure a ticket through (i) the show's website, (ii) a producer, (iii) Warner Bros.-run ticket lotteries or contests, or (iv) a charity to which Warner Bros. has donated tickets.

52.     For those invitees who secure tickets through the website, lotteries, or contests, Warner Bros. includes the following unambiguous language on *Ellen* tickets to emphasize the strict prohibition against unauthorized transfer or sale: "*Please note that these tickets cannot be sold or transferred to another person.*"

53.     Tickets offered through a charity donation are tightly controlled.  The winner of the auction (donor) must email the audience coordinator with the tracking number from the donation and the guests' names.  For those invitees who secure tickets through a charity donation, Warner Bros. includes the following unambiguous language on *Ellen* tickets to emphasize the strict prohibition against unauthorized transfer or sale:  "These tickets cannot be sold or reproduced in any manner."

54.     Invitees to *Ellen* must have their names on the *Ellen* guest list and present photo identification to an *Ellen* audience coordinator in order to obtain entry to the show.

**3.     Defendants Unlawfully Advertise and Sell Tickets to Warner Bros. Movie Premieres and Television Tapings, Including Purported Events that Have Not Yet Been Scheduled**

55.     Notwithstanding the prohibitions against unauthorized transfer or sale of tickets to Warner Bros.' private, invitation-only events, Defendants continue to offer for sale and, upon information and belief, have sold tickets to these events. Defendants also advertise and purport to sell tickets to events, such as premieres for soon-to-be-released movies, that Warner Bros. has not yet even scheduled and as to which Defendants would not, in any case, have the right to sell tickets even once the event is scheduled.

56.     In April 2014, Warner Bros. was contacted by someone who had purchased from VIP Concierge two tickets for the *Transcendence* film premiere and after-party for a total of $5,000.  VIP Concierge was not authorized to sell any tickets to this (or any other) Warner Bros. film premiere and after-party.  Upon learning of the sale, Warner Bros. contacted the purchaser to let him know that Warner Bros. does not sell tickets to its premieres and after-parties, that tickets to such events are nontransferable, that neither ticketholder appeared on the guest list for the event, and that neither purported ticketholder would be admitted to the *Transcendence* premiere or after-party.

57.     The homepage at www.thevipconcierge.com has advertised, or is currently advertising, tickets for sale to private, invitation-only events and tapings for the following Warner Bros. motion pictures and television programs:

a.     *The Accountant*;

b.     *Batman v. Superman: Dawn of Justice*;

c.     *The Big Bang Theory*;

1    d. *The Dark Knight Rises*;

2    e. *Ellen*;

3    f. *Fantastic Beasts and Where to Find Them*;

4    g. *Journey 2: The Mysterious Island*;

5    h. *Live by Night*;

6    i. *Suicide Squad*; and

7    j. *Transcendence*.

8   58. Unless enjoined, Defendants will continue to offer to sell and sell tickets

9 to Warner Bros.' private, invitation-only events to the unwitting public that upon

10 Defendants' unlawful and unauthorized sale or transfer are void.  Defendants will also

11 continue to advertise and purport to sell tickets to events, such as premieres for

12 soon-to-be-released movies, that Warner Bros. has not yet even scheduled and as to

13 which Defendants would not, in any case, have the right to sell tickets even once the

14 event is scheduled.

15 **D.** **SPE Private Events**

16    **1.** **SPE Sponsors Private Movie Premieres**

17   59. SPE sponsors private, invitation-only motion picture premieres, tickets

18 to which are nontransferable.

19   60. SPE only provides motion picture premiere invitations to an elite list of

20 invited guests, which includes talent, filmmakers, talent, studio executives,

21 production team members, and other individuals connected with the film in some

22 way.

23   61. To emphasize the strict prohibition against unauthorized transfer or sale,

24 SPE includes unambiguous language on motion picture premiere invitations, such as:

25 "TICKETS ARE NON-TRANSFERABLE," "THIS INVITATION IS

26 NON-TRANSFERABLE," and "[t]his invitation is intended only for the specific

27 invitee and may not be transferred or sold."

28

62.    To further emphasize the strict prohibition against unauthorized transfer or sale, tickets provided to invited guests state that SPE "reserves the right to revoke this invitation and refuse admission if transferred or sold."

**2.    Defendants Unlawfully Advertise and Sell Tickets to SPE Movie Premieres, Including Purported Events that Have Not Yet Been Scheduled**

63.    Notwithstanding the prohibitions against unauthorized transfer or sale of tickets to SPE's private, invitation-only events, Defendants continue to offer for sale and, upon information and belief, have sold tickets to these events.  Defendants also advertise and purport to sell tickets to events, such as premieres for soon-to-be-released movies, that SPE has not yet even scheduled and as to which Defendants would not, in any case, have the right to sell tickets even once the event is scheduled.

64.     The homepage at www.thevipconcierge.com has advertised, or is currently advertising, tickets for sale to private, invitation-only events for the following SPE motion pictures:

a.    *The Angry Birds Movie*;

b.    *Concussion*;

c.    *Ghostbusters*;

d.    *Inferno*;

e.    *The Magnificent Seven*;

f.    *The Night Before*;

g.    *Passengers*;

h.    *Sausage Party*;

i.    *Spectre*; and

j.    *Underworld: Blood Wars*.

65.    Unless enjoined, Defendants will continue to offer to sell and sell tickets to SPE's private, invitation-only events to the unwitting public that upon Defendants'

unlawful and unauthorized sale or transfer are void.  Defendants will also continue to advertise and purport to sell tickets to events, such as premieres for soon-to-be-released movies, that SPE has not yet even scheduled and as to which Defendants would not, in any case, have the right to sell tickets even once the event is scheduled.

**E.   *Defendants' Unauthorized Use of Plaintiffs' Intellectual Property***

66.    Defendants' misconduct has included and, upon information and belief, will continue to include, unauthorized commercial use of Plaintiffs' intellectual property identified below and on Exhibits A through H, including trademark misuses and copying, public display, and other uses such as creation and use of unauthorized derivatives of Plaintiffs copyrighted works, on their website, www.thevipconcierge.com and otherwise.  This conduct is infringing under applicable law and also creates and/or exacerbates confusion and/or false impressions among the public about a possible connection between Plaintiffs and Defendants.

**1.     The Disney Plaintiffs' Intellectual Property**

67.    One or other Disney Plaintiff owns the copyrights and trademarks associated with each of the following properties as stated in detail in Exhibits A (Copyrights) and B (Trademarks) and each has taken all steps necessary to perfect and maintain such ownership.

68.    Defendants have infringed and on information and belief will continue to infringe the following copyright-protected intellectual property, among others:

> a.    *Alice Through the Looking Glass* – Entire Motion Picture, Screenplay as Spoken Text (Copyright Registration No. PA 1-991-651).

> b.    *Captain America: Civil War* – Entire Motion Picture (Copyright Registration No. PA 1-988-141).

> c.    *Doctor Strange* – Teaser (2) One Sheet (Copyright Registration No. VA 2-010-320).

     d.   *Finding Dory* – Entire Motion Picture, Revisions/additions to script as spoken text (Copyright Registration No. PA 1-994-819).

     e.   *The Jungle Book* – Teaser One Sheet (Copyright Registration No. VA-1-977-778).

     f.   *Moana* – One Sheet [application pending].

     g.   *Pirates of the Caribbean:  Dead Men Tell No Tales* – Branding Version 2 Global May 2017 (Copyright Registration No. VA 2-014-092).

     h.   *Star Wars:  Episode VII - The Force Awakens* – Entire Motion Picture, Script/Screenplay as spoken text (Copyright Registration No. PA 1-975-592).

*See* Exhibit A.

69.    The Disney Plaintiffs own all rights, title, and interest in and to, and hold the rights to market, license, and sell services and merchandise bearing the words and/or design marks associated with, among others, *Star Wars: The Force Awakens*, *Finding Dory*, *Disney Moana*, *Pirates of the Caribbean:  Dead Men Tell No Tales*, *The Jungle Book*, *Captain America:  Civil War*, *Doctor Strange*, and Radio Disney (the "Disney Trademarks").  *See* Exhibit B.

70.    The Disney Plaintiffs possess numerous federal registrations relating to the Disney Trademarks, representative examples of which are attached at Exhibit B, as well as common-law trademark rights.  As a result of widespread advertising and sales by the Disney Plaintiffs, their affiliates and licensees, together with long-standing consumer recognition, the Disney Plaintiffs' Trademarks are widely recognized as source identifiers of and for the Disney Plaintiffs' authorized products and services.  The Disney Plaintiffs' Trademarks are each inherently distinctive and/or have acquired secondary meaning in the minds of consumers.

1      **2.**     **The NBCUniversal Plaintiffs' Intellectual Property**

2      71.     One or other NBCUniversal Plaintiff owns the copyrights and

3 trademarks associated with each of the following properties as stated in detail in

4 Exhibits C (Copyrights) and D (Trademarks) and each has taken all steps necessary to

5 perfect and maintain such ownership.

6      72.     Defendants have misused and on information and belief will continue to

7 misuse portions of the following copyright-protected intellectual property, among

8 others:

9             a.     *The Purge: Election Year* – Teaser One-Sheet (Copyright

10                      Registration No. VA 2-018-667).

11             b.     *Jason Bourne* – Teaser One-Sheet (Copyright Registration No.

12                      VA 2-018-090).

13             c.     *Fifty Shades of Grey* – Teaser  One-Sheet 2-Sided (Copyright

14                      Registration No. VA 2-009-069) and Teaser #2 One-Sheet

15                      Two-Sided (Lip) (Copyright Registration No. VA 2-009-770).

16             d.     *Neighbors 2: Sorority Rising* – Teaser One-Sheet (Copyright

17                      Registration No. VA 2-018-262).

18             e.     *Jurassic World* – Teaser One-Sheet 2-Sided (Copyright

19                      Registration No. VA 1-947-102).

20 *See* Exhibit C.

21      73.     The NBCUniversal Plaintiffs own all rights, title, and interest in and to,

22 and hold the rights to market, license, and sell services and merchandise bearing the

23 words and/or design marks associated with, among others, *Bourne*, *Saturday Night*

24 *Live*, *SNL*, *The Tonight Show Starring Jimmy Fallon*, and *Jurassic World* (the

25 "NBCUniversal Trademarks").  *See* Exhibit D.

26      74.     The NBCUniversal Plaintiffs possess numerous federal registrations

27 relating to the NBCUniversal Trademarks, as well as common-law trademark rights.

28 As a result of widespread advertising and sales by the NBCUniversal Plaintiffs and

CALDWELL
LESLIE &
PROCTOR

-18-

1  their licensees, together with long-standing consumer recognition, the NBCUniversal

2  Trademarks are widely recognized as source identifiers of and for authorized

3  NBCUniversal products and services.  The NBCUniversal Trademarks are each

4  inherently distinctive and/or have acquired secondary meaning in the minds of

5  consumers.

6  **3.      Warner Bros.' Intellectual Property**

7  75.    Plaintiff Warner Bros. owns the copyrights and trademarks associated

8  with each of the following properties as stated in detail in Exhibits E (Copyrights) and

9  F (Trademarks) and has taken all steps necessary to perfect and maintain such

10  ownership.

11  76.    Defendants have misused and on information and belief will continue to

12  misuse portions of the following copyright-protected intellectual property, among

13  others:

14           a.      *The Accountant* – Teaser (Copyright Registration No. VA

15                   2-018-266).

16           b.      *Batman v. Superman* – Dawn of Justice (Batman Shield)

17                   (Copyright Registration No. VA 2-009-038).

18           c.      *The Big Bang Theory* – Style Guide 2012 (Copyright Registration

19                   No. VAu 1-129-784).

20           d.      *The Dark Knight Rises* – Teaser (Copyright Registration No. VA

21                   1-783-285).

22           e.      *Journey 2: The Mysterious Island* – Poster Advertisement

23                   [application pending].

24           f.      *Live By Night* – Teaser [application pending].

25  *See* Exhibit E.

26  77.    Warner Bros. owns all rights, title, and interest in and to, and holds the

27  rights to market, license, and sell services and merchandise bearing the words and/or

28  design marks associated with, among others, *The Big Bang Theory*, *Fantastic Beasts*

*and Where to Find Them*, and *Suicide Squad* (the "Warner Bros. Trademarks"). *See* Exhibit F.

78.     Warner Bros. possesses numerous federal registrations relating to the Warner Bros. Trademarks. As a result of widespread advertising and sales by Warner Bros. and its licensees, together with long-standing consumer recognition, the Warner Bros. Trademarks are widely recognized as source identifiers of and for authorized Warner Bros. products and services. The Warner Bros. Trademarks are each inherently distinctive and/or have acquired secondary meaning in the minds of consumers.

**4.     SPE's Intellectual Property**

79.     Plaintiff SPE owns the copyrights and trademarks associated with each of the following properties as stated in detail in Exhibits G (Copyrights) and H (Trademarks) and has taken all steps necessary to perfect and maintain such ownership.

80.     Defendants have misused and on information and belief will continue to misuse portions of the following copyright-protected intellectual property, among others:

      a.     *Concussion* – Theatrical Poster #1 (Copyright Registration No. VA 2-002-857).

      b.     *The Night Before* – Teaser Poster #1 (Copyright Registration No. VA 2-002-856).

      c.     *Passengers* – Teaser Poster #1 [application pending].

      d.     *Sausage Party* – Teaser Poster #1 (Copyright Registration No. VA 2-018-088).

      e.     *Spectre* – Teaser Poster #1 (Copyright Registration No. VA 2-008-912).

      f.     *Underworld: Blood Wars* – Teaser Poster #1 [application pending].

CALDWELL
LESLIE &
PROCTOR

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  *See* Exhibit G.

2      80.    SPE owns all rights, title, and interest in and to, and holds the rights to

3  market, license, and sell services and merchandise bearing the word and/or design

4  marks associated with, among others, *Ghostbusters* (the "SPE Trademarks").  *See*

5  Exhibit H.

6      81.    SPE possesses numerous federal registrations relating to the SPE

7  Trademarks, as well as common-law trademark rights.  As a result of widespread

8  advertising and sales by SPE and its licensees, together with long-standing consumer

9  recognition, the SPE Trademarks are widely recognized as source identifiers of and

10  for authorized SPE products and services.  The SPE Trademarks are each inherently

11  distinctive and/or have acquired secondary meaning in the minds of consumers.

12  **F.    Defendants' Conduct Is Willful under Applicable Law**

13      82.    Defendants have engaged in, and on information and belief will continue

14  to engage in, the misconduct alleged despite facts that would lead any reasonable

15  person to conclude the misconduct is infringing and otherwise wrong under

16  applicable law and harmful to Plaintiffs and others.  In addition to the prior lawsuits

17  by others, Defendants continued the misconduct following demands from each of the

18  Plaintiffs that they stop.

19      **1.    The Disney Plaintiffs Demanded that Defendants Stop Their**

20          **Misconduct**

21      83.    The Disney Plaintiffs have demanded on multiple occasions that VIP

22  Concierge stop its unauthorized offering for sale of tickets to their private events and

23  unlawful and infringing use of their protected intellectual property.

24      84.    In March 2015, counsel for Lucasfilm wrote to VIP Concierge

25  concerning its unauthorized offering for sale of tickets to the private premiere and

26  after-party for Star *Wars: The Force Awakens* and its infringing use of Lucasfilm

27  intellectual property.  Lucasfilm demanded that VIP Concierge stop using its

28  intellectual property and stop offering tickets to its private event.  The Disney

1    Plaintiffs submitted notices of infringement to the ISP hosting the website

2    www.thevipconcierge.com.  Defendants subsequently moved their website to an ISP

3    located in India and continued to post infringing advertisements for the sale of

4    unauthorized tickets to the Disney Plaintiffs' private events.

5         85.    The Disney Plaintiffs also sent several notices of infringement to

6    websites, including Craigslist.com and Amazon.com, informing them that tickets

7    being offered by VIP Concierge in connection with Disney properties including *Star*

8    *Wars: Episode VII - The Force Awakens* were unauthorized and that Defendants'

9    advertisements violated the Disney Plaintiffs' intellectual property rights.

10        **2.    The NBCUniversal Plaintiffs Demanded that Defendants Stop Their**

11        **Misconduct**

12        86.    The NBCUniversal Plaintiffs have also notified VIP Concierge on

13   multiple occasions of its wrongful conduct, including the unauthorized offering for

14   sale of tickets to the NBCUniversal Plaintiffs' private, invitation-only events and

15   unauthorized use of the NBCUniversal Plaintiffs' intellectual property.

16        87.    In early 2013, for example, the NBCUniversal Plaintiffs sent VIP

17   Concierge multiple written notifications of its improper promotion of tickets to the

18   NBCUniversal Plaintiffs' shows, films, and events, including but not limited to *The*

19   *Tonight Show with Jay Leno*, *Saturday Night Live*, and various movie premieres and

20   after-parties, and demanded that VIP Concierge cease and desist from offering for

21   sale tickets to these events and from using the NBCUniversal Plaintiffs' intellectual

22   property.  At that time, VIP Concierge pledged to stop its unauthorized activity with

23   respect to the NBCUniversal Plaintiffs' shows, films and events.

24        88.    VIP Concierge did not stop, however, and, in August 2013, the

25   NBCUniversal Plaintiffs again wrote to VIP Concierge to demand that VIP Concierge

26   stop its unlawful activity with respect to the NBCUniversal Plaintiffs' titles, property

27   and events.  The NBCUniversal Plaintiffs are informed and believe, and on that basis

28

1  allege, that Defendants temporarily removed references to the NBCUniversal
2  Plaintiffs' titles and events as a result of this correspondence.

3       89.    In or around February 2015, however, the NBCUniversal Plaintiffs were
4  made aware that VIP Concierge was again offering for sale tickets to the
5  NBCUniversal Plaintiffs' private shows, films, and events, and improperly using its
6  protected intellectual property.  Among the NBCUniversal Plaintiffs' titles were *Fifty*
7  *Shades of Grey*, *Furious 7*, and *Jurassic World*.  The NBCUniversal Plaintiffs again
8  wrote to VIP Concierge and demanded that VIP Concierge cease and desist its
9  unauthorized activity with respect to these and any future NBCUniversal television
10  shows, movie premieres, and after-parties. The communication with VIP Concierge
11  reiterated that the NBCUniversal Plaintiffs had not authorized VIP Concierge to sell
12  tickets to NBCUniversal movie premieres or to use the NBCUniversal Plaintiffs'
13  intellectual property on its website.

14       90.    In response to a cease and desist letter that the NBCUniversal Plaintiffs
15  sent in June 2015, VIP Concierge responded that it would take down any references to
16  NBCUniversal titles and events.  Within months of this agreement, however, VIP
17  Concierge again listed NBCUniversal titles and events, leaving the NBCUniversal
18  Plaintiffs with no choice but to pursue litigation.

19      **3.**    **Warner Bros. Demanded that Defendants Stop Their Misconduct**

20       91.    Warner Bros. has also notified VIP Concierge on multiple occasions of
21  its wrongful conduct, including the unauthorized offering for sale of tickets to Warner
22  Bros.' private, invitation-only events and unauthorized use of Warner Bros.'
23  protected intellectual property.

24       92.    For example, in or around February 2012, Warner Bros. sent
25  Mr. Banaszewski an email informing VIP Concierge that it was improperly claiming
26  to be selling tickets to Warner Bros. premieres and after-parties, the tickets for which
27  are nontransferable and not to be sold. VIP Concierge was also notified that it was
28  using Warner Bros.' copyrighted artwork in connection with its unauthorized

CALDWELL
LESLIE &
PROCTOR

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  advertising of tickets to Warner Bros.' events.  This was not the first such

2  communication Warner Bros. had with VIP Concierge.

3      **4.**    **SPE Demanded that Defendants Stop Their Misconduct**

4      93.    SPE has also notified VIP Concierge on multiple occasions of its

5  wrongful conduct, including the unauthorized offering for sale of tickets to SPE's

6  private, invitation-only events and unauthorized use of SPE's intellectual property.

7      94.    On September 22, 2015, for example, SPE wrote to VIP Concierge

8  informing VIP Concierge that its practice of offering access or tickets to SPE movie

9  premieres was unauthorized and improper, and that VIP Concierge's unlicensed

10 reproduction and use of SPE's protected intellectual property was unlawful. SPE

11 demanded that VIP Concierge cease and desist from offering access to the *Spectre*

12 movie premiere and from using any SPE intellectual property.

13     95.    On September 28, 2015, VIP Concierge sent a reply to SPE's September

14 22 letter, stating, "This is clearly a public event.  Under CA law, we are allowed to

15 resell any public event, such as this, regardless of asking your permission or not."

16 **G.**    ***Defendants' Continued Disregard for Plaintiffs' Rights***

17     96.    As described herein, having discovered Defendants' unlawful conduct,

18 Plaintiffs:  (i) informed Defendants of the restrictions on the transfer or sale of tickets,

19 and that any unauthorized transfer or sale is unlawful, will automatically render the

20 tickets void, and will subject the ticket holders to ejection from the event as

21 trespassers; (ii) demanded that Defendants stop offering to sell and selling tickets;

22 (iii) demanded that Defendants provide written assurances that they will not offer to

23 sell and/or sell tickets in the future; and/or (iv) demanded that Defendants cease using

24 Plaintiffs' intellectual property.  Defendants have failed and refused to comply with

25 these demands.  They continued and, upon information and belief will continue,

26 unless enjoined from, the misconduct, including in a manner affecting interstate

27 commerce.

28

# V.

## CAUSES OF ACTION

### COUNT I

### TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. §§ 1114

### (Against All Defendants)

97.    Plaintiffs repeat and reallege every allegation contained in the prior paragraphs as though fully set forth herein.

98.    The trademarks named in the paragraphs above and on Exhibits B, D, F, and H are inherently distinctive, strong, valid, and protectable trademarks owned by one or other of the Plaintiffs.

99.    Defendants have infringed and continue to infringe Plaintiffs' registered trademarks and common law trademark rights in connection with their unauthorized offering for sale and sale of tickets to Plaintiffs' private events and to non-existent events, such as premieres of soon-to-be-released movies that Plaintiffs have not yet scheduled.

100.    Defendants have displayed and/or commercially used Plaintiffs' marks as part of their website and other advertisements.  Defendants' display or use of these marks is and has been without the consent or authorization of Plaintiffs and for commercial purposes.

101.    Defendants' use of Plaintiffs' marks to advertise and transact unauthorized sales of tickets to Plaintiffs' private events, and to events that Plaintiffs have not yet scheduled, is likely to cause confusion, mistake, and deception of the public as to the identity, origin, and validity of Defendants' goods and services, causing irreparable harm to Plaintiffs for which there is no adequate remedy at law.

102.    By reason of the foregoing acts, Defendants are liable to Plaintiffs for trademark infringement under 15 U.S.C. § 1114.

103.This is an exceptional case within the meaning of Section 35 of the Lanham Act, 15 U.S.C. § 1117, entitling Plaintiffs to, among other things, Defendants'

1  profits, treble damages or statutory damages, and an award of reasonable attorneys'

2  fees.

3      104.   Plaintiffs have suffered serious injury as a result of the foregoing

4  infringement of their trademarks, including harm to their goodwill and reputation in

5  the marketplace.  In addition, Plaintiffs will continue to suffer serious injury if

6  Defendants are not enjoined from commercially using Plaintiffs' trademarks.

7  Plaintiffs have no adequate remedy at law for Defendants' knowing and willful acts of

8  infringement.  Therefore, Plaintiffs are entitled to preliminary and permanent

9  injunctions enjoining Defendants' acts of infringement.

10                              **COUNT II**

11  **COPYRIGHT INFRINGEMENT IN VIOLATION OF 17 U.S.C. §§ 106, et seq.**

12                          **(Against All Defendants)**

13      105.   Plaintiffs repeat and reallege every allegation contained in the prior

14  paragraphs as though fully set forth herein.

15      106.   Defendants have copied, displayed and/or created unauthorized

16  derivative works, infringing Plaintiffs' copyrighted material in Defendants'

17  advertisements, as described in the prior paragraphs and as shown in Exhibits A, C, E,

18  G (copyrighted works at issue) and I (screenshots of Defendants' website).

19      107.   Defendants' copying, creation of derivative works, display or other use

20  of the copyrighted material is and has been without the authorization of Plaintiffs and

21  continued after objection by Plaintiffs.  Defendants' conduct therefore constitutes

22  willful infringement of Plaintiffs' copyrighted material.

23      108.   Plaintiffs have suffered and continue to suffer serious injury as a result of

24  the foregoing infringement of their copyrights, including harm to their goodwill and

25  reputation in the marketplace, incalculable harm to their infringed properties, and

26  increased risk of piracy of these properties, among other things.  Plaintiffs have no

27  adequate remedy at law.  Therefore, Plaintiffs are entitled to preliminary and

28  permanent injunctions against Defendants' acts of infringement as well as an award

of  Plaintiffs' costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505, in addition to Defendants' profits, actual damages, or statutory damages.

## COUNT III

### UNFAIR OR DECEPTIVE ACTS OR PRACTICES IN VIOLATION OF 15 U.S.C. § 1125(a)(1)(A)

#### (Against All Defendants)

109.   Plaintiffs repeat and reallege every allegation contained in the prior paragraphs as though fully set forth herein.

110.   Defendants' conduct has created a likelihood of confusion as to whether Plaintiffs and Defendants are associated in some way.  Such conduct constitutes false and misleading representations of fact in connection with Defendants' goods, services and commercial activities.

111.   By misusing Plaintiffs' intellectual property and offering for sale and/or selling tickets to Plaintiffs' private  events, including purported events that Plaintiffs have not yet scheduled, Defendants have been causing and continue to cause members of the public to be confused and deceived into believing that Plaintiffs authorized, approved, or somehow sponsored the sale of such tickets or that Defendants are otherwise affiliated with Plaintiffs, when in fact there is no association and Defendants' conduct is unauthorized.

112.   Defendants' conduct as described herein has caused harm to Plaintiffs' goodwill and reputation as a result of the risks associated with unauthorized access to Plaintiffs' private, invitation-only events and the negative publicity associated with the exclusion of unauthorized ticket holders.  Defendants' conduct in advertising events, such as premieres of soon-to-be-released movies that Plaintiffs have not yet scheduled, has similarly tarnished Plaintiffs' goodwill and reputation.

113.   Accordingly, Defendants' conduct as described herein constitutes unfair or deceptive acts or practices concerning the association and endorsement of goods in violation of 15 U.S.C. § 1125(a)(1)(A).

1      114.   This is an exceptional case within the meaning of Section 35 of the

2  Lanham Act, 15 U.S.C. § 1117, entitling Plaintiffs to, among other things, Defendants'

3  profits, treble damages, or statutory damages, and an award of reasonable attorneys'

4  fees.

5  **COUNT IV**

6  **UNFAIR OR DECEPTIVE ACTS OR PRACTICES IN**

7  **VIOLATION OF CAL. BUS. & PROF. CODE §§ 17200 AND 17500**

8  **(Against All Defendants)**

9      115.   Plaintiffs repeat and reallege every allegation contained in the prior

10  paragraphs as though fully set forth herein.

11      116.   Plaintiffs own or lease the rights to venues for the private,

12  invitation-only events described herein, and will continue to own or lease venues for

13  future private, invitation-only events.  Plaintiffs have and will have the right to the

14  exclusive possession of such venues during the days and times of their private

15  events.

16      117.   At all relevant times, Defendants have been on notice that:  (i) Plaintiffs'

17  events are private and by invitation only; (ii) Plaintiffs do not permit the transfer or

18  sale of tickets to these events; and (iii) ticket bearers not invited by Plaintiffs will be

19  subject to removal from the events as trespassers.  Nevertheless, Defendants have

20  offered to sell and/or have sold, and continue to offer to sell and/or sell, such tickets.

21      118.   Members of the public are likely to be confused and deceived into

22  believing that if they purchase such tickets from Defendants, they are welcome to

23  attend the events.  This confusion is especially likely because Defendants are

24  commercial ticket brokers that routinely resell tickets to a variety of

25  public/non-private entertainment events and because Defendants regularly misuse

26  Plaintiffs' intellectual property.

27      119.   Defendants' conduct as described herein has caused harm to Plaintiffs'

28  goodwill and reputation as a result of the risks associated with unauthorized access to

1  Plaintiffs' private, invitation-only events and the negative experiences and publicity

2  associated with the exclusion of unauthorized ticket holders.

3     120.   Defendants' conduct as described herein constitutes unfair and

4  fraudulent business acts or practices and deceptive, untrue, and misleading

5  advertising in violation of California Business & Professions Code §§ 17200 and

6  17500.

7                                    **COUNT V**

8                          **<u>INDUCEMENT OF TRESPASS</u>**

9                          **<u>(Against All Defendants)</u>**

10    121.   Plaintiffs repeat and reallege every allegation contained in the prior

11  paragraphs as though fully set forth herein.

12    122.   Plaintiffs own or lease the rights to venues for the private events

13  described herein, and will continue to own or lease venues for future private,

14  invitation-only events.  Plaintiffs have and will have the right to the exclusive

15  possession of such venues during the days and times of the private, invitation-only

16  events described herein.

17    123.   Permission to enter Plaintiffs' private events, including their related

18  areas, is restricted to invitees of Plaintiffs.

19    124.   Members of the public who in the future may purchase from Defendants

20  tickets to Plaintiffs' private events, will be trespassers, as will Defendants themselves

21  for causing the trespasses.

22    125.   By enabling uninvited members of the public to attend Plaintiffs' private

23  events, Defendants intentionally and wrongfully intruded, and will continue to intrude,

24  into Plaintiffs' private events and premises.

25    126.   Defendants' conduct as described herein constitutes an inducement of

26  trespass by those uninvited members of the public who purchase tickets to Plaintiffs'

27  private events from or through Defendants.

28

127.   Plaintiffs suffered, and will suffer, damage resulting from Defendants' unjustified and wrongful conduct.  Such damage includes the trespasses into the Plaintiffs' private events by people who are not invitees of Plaintiffs, interference with Plaintiffs' efforts to protect against potential security breaches and content piracy, and harm to Plaintiffs' goodwill and reputation caused by the risks associated with unauthorized access to Plaintiffs' private events and the negative experiences and publicity associated with the exclusion or removal of unauthorized ticket holders. Such damage is incalculable and irreparable.  Plaintiffs are, therefore, entitled to preliminary and permanent injunctive relief.

## VI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1.     Temporarily, preliminarily and permanently enjoining Hollywood Entertainment Group LLC, its officers, agents, servants, and employees, and all persons in active concert and participation with it, and Craig Banaszewski from:

(a)     Offering or attempting to offer to buy or sell, or soliciting the purchase or sale of, any ticket, badges, credentials, or anything facilitating access to any of Plaintiffs' private  events, including events that have not yet been scheduled;

(b)     Offering to perform, attempting to perform, or performing any act as an intermediary, broker, or middleman relating to the purchase, sale, or transfer of tickets, badges, credentials, or anything facilitating access to any of Plaintiffs' private events, including events that have not yet been scheduled;

(c)     Advertising or publishing any offer to purchase, sell, transfer or broker, or to otherwise act as an intermediary, broker, or middleman, relating to the purchase, sale, or transfer of tickets, badges, credentials, or anything facilitating access to any of Plaintiffs' private events, including events that have not yet been scheduled;

1       (d)    Entering or attempting to enter any of Plaintiffs' private events,

2 including events that have not yet been scheduled;

3       (e)    Participating in, aiding, or facilitating, or attempting to participate

4 in, aid, or facilitate, any effort by any person to gain unauthorized entry into any of

5 Plaintiffs' private events, including events that have not yet been scheduled;

6       (f)    Receiving any compensation, whether in money, in kind or

7 otherwise, for any of the acts proscribed in subparagraphs (a) through (e) above;

8       (g)    Using or displaying for any purpose any trademark, or any

9 facsimile, depiction, image, photograph, picture, illustration, or other visual

10 representation containing any trademark owned by Plaintiffs and/or any of their

11 affiliates; and

12       (h)    Copying, creating any derivative work, or displaying for any

13 purpose any copyrighted work, or any depiction, image, photograph, picture,

14 illustration, or other visual representation containing any copyrighted material owned

15 by Plaintiffs and/or any of their affiliates.

16     2.    Requiring Defendants, their officers, agents, servants, and employees,

17 and all persons in active concert and participation with them, to:  (i) engage in

18 corrective advertising on any and all websites that have contained an offer to sell

19 tickets to any of Plaintiffs' private events, including events that have not yet been

20 scheduled; (ii) inform consumers that Defendants are not authorized to sell tickets to

21 any of Plaintiffs' private events, including events that have not yet been scheduled,

22 and that any unauthorized transfer or sale of such is unlawful, will automatically

23 render the tickets void, and will subject the ticket holders to ejection from such events

24 as trespassers; and (iii) return and refund to all consumers all sums paid to Defendants

25 for tickets to Plaintiffs' private events, including events that have already occurred

26 whether or not the customer in fact attended, and events that have not yet been

27 scheduled;

28

CALDWELL
LESLIE &
PROCTOR

-31-

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

3.      Requiring Defendants, their officers, agents, servants, and employees, and all persons in active concert and participation with them, to immediately disclose to Plaintiffs any and all past and present sources of tickets to Plaintiffs' private events, including events that have not yet been scheduled, that Defendants have reserved for sale, offered to sell, and/or sold;

4.      Directing that Defendants account to Plaintiffs for all gains, profits, and advantages derived from their wrongful conduct described herein;

5.      Directing that Defendants pay Plaintiffs such damages as they have sustained as a consequence of Defendants' wrongful conduct described herein, with the precise amount to be determined at trial;

6.      Directing that the Defendants pay Plaintiffs such statutory damages as authorized by law;

7.      Directing that the aforesaid amounts be multiplied or otherwise enhanced as authorized by law;

8.      Directing that Defendants pay to Plaintiffs punitive damages in an amount to be determined at trial;

9.      Directing that Defendants pay to Plaintiffs pre- and post-judgment interest;

10.     Directing that Defendants pay to Plaintiffs the costs of this action and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and 17 U.S.C. § 505; and

///
///
///
///
///
///
///
///

1        11.    Granting Plaintiffs such other and further relief as the Court may deem

2   just and proper.

3

4   DATED:  December 21, 2016          CALDWELL LESLIE & PROCTOR, PC
                                       LINDA M. BURROW
5                                      JEANNE A. FUGATE
                                       FEIFEI B. JIANG
6

7

8                                      By      /s/ Linda M. Burrow
                                          _____
9                                         LINDA M. BURROW
                                       Attorneys for Plaintiffs
10                                     DISNEY ENTERPRISES, INC.; LUCASFILM
11                                     LTD. LLC; LUCASFILM ENTERTAINMENT
                                       COMPANY LLC; MARVEL CHARACTERS,
12                                     INC.; MVL FILM FINANCE LLC;
13                                     NBCUNIVERSAL MEDIA, LLC;
                                       UNIVERSAL CITY STUDIOS LLC;
14                                     WARNER BROS. ENTERTAINMENT INC.;
15                                     and SONY PICTURES ENTERTAINMENT
                                       INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

# VII.

## DEMAND FOR JURY TRIAL

Plaintiffs Disney Enterprises, Inc., Lucasfilm Ltd., LLC, Lucasfilm Entertainment Company, Marvel Characters, Inc., MVL Film Finance LLC, NBCUniversal Media, LLC, Universal City Studios LLC, Warner Bros. Entertainment Inc., and Sony Pictures Entertainment Inc. hereby demand a trial by jury.

DATED:  December 21, 2016      CALDWELL LESLIE & PROCTOR, PC
LINDA M. BURROW
JEANNE A. FUGATE
FEIFEI B. JIANG


By _____*/s/ Linda M. Burrow*_____
      LINDA M. BURROW
Attorneys for Plaintiffs
DISNEY ENTERPRISES, INC.; LUCASFILM LTD. LLC; LUCASFILM ENTERTAINMENT COMPANY LLC; MARVEL CHARACTERS, INC.; MVL FILM FINANCE LLC; NBCUNIVERSAL MEDIA, LLC; UNIVERSAL CITY STUDIOS LLC; WARNER BROS. ENTERTAINMENT INC.; and SONY PICTURES ENTERTAINMENT INC.